# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

| | |
|---|---|
| OLIVIA COLEY-PEARSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EMILY MISTY MARTIN, et al., )<br>)<br>Defendants. ) | Civil Action File<br>No. 5:20-cv-151-LGW-BWC |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## COUNTY DEFENDANTS' MOTION TO DISMISS

Defendants Coffee County, via its Board of Elections, and Emily Misty Martin aka Misty Hayes (the "County Defendants") have moved to dismiss Plaintiff's complaint.[1] Notably, their motion does not argue that Plaintiff's banishment was lawful, that the complaint's allegations failed to establish municipal culpability under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978), or that Martin might be entitled to qualified immunity.

Instead, the County Defendants only argue standing and ripeness. Defendants' problem is that their argument is directed only towards Plaintiff's

---

[1] Plaintiff agrees to dismiss claims against Martin, in her official capacity only, as she recently resigned amidst an investigation into her submitting false time records. *See* Robert Preston, "Board of Elections Accepts Employee Resignations, Election Office Temporarily Closed," Douglas Now (Mar. 3, 2021), *available at* https://douglasnow.com/index.php/news/item/8778-board-of-elections-accepts-employee-resignations-election-office-temporarily-closed.

claims for injunctive relief, ignoring her claims for nominal and compensatory damages. Plaintiff has in fact already obtained the full measure of injunctive relief sought by virtue of the parties' stipulation entered earlier in this action. *See* Doc. 10. Plaintiff's damages claims arise from already suffered injuries involving the forced cessation of her First Amendment conduct between the time when the County Board of Election's voted to banish Plaintiff and the entry of the stipulation vacating the banishment order. Her damages claims are, of course, live. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, --- (2021) (holding that nominal damages confer standing where injunctive relief is mooted). Plaintiff's injuries are concrete and have already occurred; thus, this Court can adjudicate Plaintiff's claims for small and nominal damages.

## FACTUAL BACKGROUND

### A. *The County Defendants Caused the Banishment Order to be Issued*

Plaintiff's complaint alleged the County Defendants banished Plaintiff from any polling place during any voting time or when any other official business was in progress. *See* Doc. 1 ¶ 2. Specifically, Martin purported to ban Plaintiff from the polling site after Martin started yelling at Plaintiff as she assisted an illiterate voter. *Id.* ¶ 17. Later that day, Plaintiff returned to the polling site in the course of driving another prospective voter to the polls. *Id.* ¶ 18. Martin then called law enforcement and directed them to issue a trespass ban for Plaintiff, which they did. *Id.* ¶¶ 18, 20–21. As to the County, the Board of

Elections voted to banish Plaintiff. *Id*. ¶ 25. The County attorney also agreed to banish Plaintiff. *Id*. ¶ 25. Plaintiff's complaint and her briefing assert that this banishment violated the First and Fourteenth Amendments and the Georgia Constitution. *See generally* Doc. 1; Doc. 5-1.

The County Defendants' briefing expends significant effort to incorporate the Douglas Police Department's police report. The import of this document is not immediately apparent. Their briefing makes clear that the "County Defendants do not rely upon the Incident Report as a basis for dismissal of Plaintiff's claims on the grounds argued below." Doc. 28 at 7. Perhaps the County Defendants rely on this document to create an inference that it was the City Defendants, not them, that caused Plaintiff's banishment, although that is not an argument they make explicitly. Regardless, any such argument would be directly controverted by Plaintiff's allegations that Martin and the Board of Elections voted and otherwise directed the City Defendants to issue the trespass ban. As such, Plaintiff objects to the Court's consideration of the incident report to the extent the same is inconsistent with Plaintiff's complaint.[2]

---

[2] First, Defendants cite no authority that a police report can be read to contradict the facts in a Plaintiff's complaint. Obviously, a contract referenced in a complaint but not appended to it is different than an incident report. Plaintiff largely disputes the allegations regarding her conduct in the incident report.

Second, Plaintiff did not refer to or rely on the incident report in her complaint. There is some overlap in factual material between the incident report and the complaint, but Plaintiff made no reference to the document itself.

16

### B. *Plaintiff's Chilled First Amendment Speech and Conduct*

Plaintiff's complaint contained detailed allegations about the forced cessation of her associational, political, and expressive conduct. She is an elected Douglas City Commissioner and is "actively involved in helping people exercise their right to vote." *See id.* ¶ 1. As an elected official, Plaintiff alleges that she attends polling places more often than a regular citizen so that she can "assist[] constituents with complaints, monitor[] performance of government operations, and communicat[e] with and on behalf of constituents and Douglas employees." *See id.* ¶ 32. She has been helping voters vote since at least 2012. *See id.* ¶ 16. Plaintiff's frequent electoral activity at the polls is exemplified by the fact she visited her local polling place at least twice on the date of her arrest to assist multiple voters in casting ballots. *See id.* ¶¶ 17–18.

---

Therefore, the County Defendants' reliance on *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368-69 (11th Cir. 1997) and *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) is misplaced.

Third, Plaintiff objects because the incident report is hearsay. *See, e.g.*, *United States v. Zayas*, 146 F. App'x 346, 351 (11th Cir. 2005) ("testimony on the contents of another officer's arrest report" was "either hearsay or double hearsay"); *Brown v. State*, 549 S.E.2d 107, 109 (Ga. 2001) (holding that a police report does not qualify as a business record because it "does not have the reliability inherent in other documents that courts have traditionally considered to be business records").

Fourth, while Defendant appears to argue against converting their motion to a motion for summary judgment, Plaintiff also objects to converting the motion to one for summary judgment. Nevertheless, Plaintiff notes that her complaint was verified.

The County Defendants' October 27, 2020 banishment of Plaintiff from all locations used as polling places significantly restricted her regular protected activity. From that point forward, she was not allowed to assist voters or drive them to the polls from October 27 through election day on November 3. Plaintiff alleged that the County's ban would have prevented her from casting a vote herself in the January 2021 run-off, *see id*. ¶¶ 4, 34, although she was ultimately able to vote when the trespass ban was lifted. She further alleged that the County's ban prevented her from assisting voters on an ongoing basis in the January 2021 run-off election as she would have otherwise done.³ *See id*.

Plaintiff also alleged that she reasonably and subjectively feared that she would be arrested again if she herself voted, or if she attempted to assist another voter in voting, or if she even attempted to drive a voter to the polls. *See id*. ¶¶ 34–35. Faced with a banishment order and based on the fact of her prior arrest for purportedly violating the trespass ban, it is a reasonable inference that Plaintiff would have been arrested had she attempted to facilitate voting for others.⁴ Such an inference is all the more plausible where Plaintiff was arrested and prosecuted

---

³ Advanced in-person (early) voting for the January 2021 run-off began on December 14, 2020. *See* O.C.G.A. § 21-2-385(d)(1)(C).

⁴ While Plaintiff does not presently make a Fourth Amendment claim for unlawful arrest based on the illegality of the trespass ban, the Court can consider the fact of her arrest in gauging the reasonableness of Plaintiff's fear of further prosecution. *But see* Doc. 28 at 14 (arguing that Plaintiff's fear of arrest was a "speculative scourge[]" and a "conjectural-future-event").

16

by these same County Defendants for her similar voter assistance activities in 2012. *See id.* ¶ 16.

## ARGUMENT AND CITATION OF AUTHORITY

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The Court accepts as true all factual allegations and views them in a light most favorable to the non-moving party. *See Hishon,* 467 U.S. at 73 (affidavits and evidence not generally permitted at the motion to dismiss stage).

## I. DEFENDANTS DO NOT ARGUE THE BAN WAS CONSTITUTIONAL, THAT MARTIN IS ENTITLED TO QUALIFIED IMMUNITY, THAT *MONELL*'S REQUIREMENTS HAVE NOT BEEN SATISFIED, OR THAT THEY DID NOT CAUSE THE BAN

At the outset, it is important to emphasize what is not at issue. It is well established that "[a]n argument not made is waived." *Hall v. Great-W. Healthcare*, 276 Fed. App'x. 923, 925 (11th Cir. 2008) (quoting *Cont'l Technical Servs. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)).

Accordingly, for the County Defendants' motion to dismiss, they have waived any argument that the trespass ban was constitutional by failing to raise

it. Indeed, overwhelming authority cited by Plaintiff in her preliminary injunction briefing shows such orders violate the First Amendment. *See generally* Doc. 5-1 at 6–14.

Perhaps based on the strength of this authority, the County Defendants fail to argue that Martin is entitled to qualified immunity. Similarly, they do not argue that the County is not responsible under *Monell* where Plaintiff has alleged that its Board of Elections voted to banish Plaintiff.

Finally, although the County Defendants attempt to direct this Court's attention to the incident report highlighting the City Defendants' involvement in the trespass ban, the County Defendants fail to argue that they did not cause the banishment order to be issued to Plaintiff. In any event, the incident report, at most, shows joint culpability for the trespass ban.

These arguments are all waived for the County Defendants' motion to dismiss.

## II. PLAINTIFF'S DAMAGES CLAIMS ARE JUSTICIABLE

Contrary to the County Defendants' contentions, Plaintiff has sufficiently alleged injuries caused by Coffee County and Martin in order to establish Article III standing. Similarly, Plaintiff's claims are ripe because her injuries have already happened—they are not a matter of future conjecture. The County Defendants go to great lengths to reiterate that the withdrawal of the trespass ban eliminated Plaintiff's need for further injunctive relief. Doc. 28 at 9-11.

16

However, they appear to ignore Plaintiff's claims for nominal and small damages for the period of time she was prohibited from engaging in a wide variety of elections-related activity, including assisting other voters in casting their ballots. Plaintiff's damages claims are justiciable.

### A. *Plaintiff Has Standing for Injuries Already Suffered*

To satisfy the "'irreducible constitutional minimum'" of Article III standing, a plaintiff must establish (1) an injury in fact (2) that is fairly traceable to the challenged conduct, and she must also seek (3) a remedy that is likely to redress that injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff's injuries are concrete—she wanted to engage in expressive and associational conduct, but she did not because she feared (further) arrest and prosecution. The County Defendants caused this harm, because they caused the trespass ban to be issued, meaning that the injuries are traceable to their initiation of the ban. Finally, damages—whether nominal, compensatory, or both—can redress this harm. *See Uzuegbunam, v. Preczewski*, 141 S. Ct. 792, --- (2021) (nominal damages satisfy redressability).

Standing principles, even as to injunctive relief, in First Amendment cases are grounded in realistic concerns about "self-censorship" and ensuring "breathing space" for speech. *Walker v. City of Birmingham*, 388 U.S. 307, 345 (1967) ("We have molded both substantive rights and procedural remedies in the face of varied conflicting interests to conform to our overriding duty to insulate

all individuals from the 'chilling effect' upon exercise of First Amendment freedoms . . . ."); *ACLU v. The Florida Bar*, 50 F.3d 901, 904 (11th Cir. 1995); *Reeves v. McConn*, 631 F.2d 377, 381 n. 2 (5th Cir. 1980) ("[S]tanding requirements are less demanding when First Amendment freedoms are endangered"); *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 2003).

In order to afford free speech "breathing space," the Supreme Court has allowed injunctive relief challenges to restrictions on speech before any legal action is taken. "[I]t is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge [action that] deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).[5]

The Supreme Court has held repeatedly that a plaintiff may pursue nominal and actual damages for a constitutional violation. In *Carey v. Piphus*, the Supreme Court held that "nominal damages without proof of actual injury" are available for a violation of due process. 435 U.S. 247, 266–67 (1978); *see also Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 309 (1986) (no "two-tiered system" in

---

[5] More specifically, the Supreme Court has emphasized that recipients of demands to cease certain conduct, such as Plaintiff here, "do not lightly disregard public officers' thinly veiled threats to institute [] proceedings against them if they do not come around . . ." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963). The Eleventh Circuit has held that government demands to "cease and desist" amount to prior restraint. *See Weaver v. Bonner*, 309 F.3d 1312, 1316–17 (11th Cir. 2002). The trespass ban was essentially a cease and desist order from engaging in any election related activities proximate to any polling place.

awarding damages for constitutional violations); *Nixon v. Herndon*, 273 U.S. 536 (1927) (damages for voting rights violation).

This Circuit likewise has held that nominal damages are available for a constitutional injury. *Amnesty Intl. v. Battle*, 559 F.3d 1150, 1177 (11th Cir. 2009) ("By alleging that its First and Fourteenth Amendment rights were violated, Amnesty has established standing to bring a § 1983 claim for nominal damages even without alleging a specific injuring flowing from the violations"); *Slicker v. Jackson,* 215 F.3d 1225, 1231 (11th Cir. 2000) ("We have held unambiguously that a plaintiff whose constitutional rights are violated is entitled to nominal damages even if he suffered no compensable injury.") (Fourth Amendment case); *Al- Amin v. Smith,* 511 F.3d 1317, 1335 (11th Cir. 2008) ("Our precedent . . . recognizes the award of nominal damages for violations of the fundamental constitutional right to free speech absent any actual injury.").

"Although a case will normally become moot 'when a subsequent [ordinance] brings the existing controversy to an end,' when the plaintiff has requested damages, those claims are not moot." *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1244 (11th Cir. 2011) (citations omitted) (awarding nominal damages under RLUIPA).

While this Circuit briefly cast doubt on the question of whether nominal damages save an otherwise moot case, *see Flanigan's Enterprises, Inc. of Georgia*

*v. City of Sandy Springs, Georgia*, 868 F.3d 1248 (11th Cir. 2017) (en banc) (holding that nominal damages do not confer standing but that that actual damages do confer standing), the Supreme Court has now reversed this Circuit and definitively ruled that nominal and actual damage claims are live even if equitable relief becomes moot. *See Uzuegbunam* 141 S. Ct. 792, --- ("[W]e conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right."). In that case, the plaintiffs challenged their college's speech policies by bringing claims for injunctive relief and nominal damages—but not any claim for compensatory damages. In litigation, their college changed its speech policies, mooting the plaintiffs' injunctive claims. The Eleventh Circuit, relying on *Flanigan's*, affirmed the dismissal for want of standing. The Supreme Court reversed, holding that nominal damages are sufficient to confer standing.[6]

Because Plaintiff was subjected to the banishment that is at this point concededly unconstitutional, she is entitled to at least nominal damages. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (nominal damages available upon finding

---

[6] *See also New York State Rifle & Pistol Ass'n, Inc. v. City of New York, New York*, 140 S. Ct. 1525, 1536 n.6 (2020) (Alito, J., dissenting from finding of mootness) ("A single Circuit has held that a claim for nominal damages alone does not maintain a live dispute. [Citing *Flanigan's*]. But that holding is difficult to reconcile with *Carey* and *Stachura*'s endorsement of nominal damages as an appropriate constitutional remedy.").

16

of violation of right, notwithstanding lack of actual damages). Under *Uzuegbunam*, Plaintiff clearly has standing.

Beyond mere nominal damages, Plaintiff also has claims for actual, though modest, compensatory damages. Plaintiff's facts about her chilled speech are specific, establishing a pattern going back to at least 2012, in which she has been actively involved in helping local voters get to the polls and to vote once there, if in need of any assistance. *See* Compl. ¶ 16. She offered verified allegations that, after her first arrest for purportedly violating the trespass ban, she feared that she would be arrested again if she returned to a polling place—even if she only intended to drive would-be voters to the polls. *Id.* ¶ 34. After all, she was first arrested for allegedly violating the ban in the polling place's parking lot. *Id.* ¶ 3. This banishment also prevented her from assisting prospective voters with voting early in both the general election and the run-off, until the parties entered into the stipulation lifting the banishment order.

These concrete harms, along with the resulting fear and any "mental and emotional distress" from not being able to exercise her rights, are compensable by damages according to the enlightened conscience of the jury. *See generally* Judicial Council of the United States Eleventh Judicial Circuit, Pattern Jury Instructions § 5.13; *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608-09 (2001) (court's power to decide a claim for compensatory damages is unchanged by "a defendant's change in conduct.");

*Stachura*, 477 U.S. at 310–11 ("When a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish, some form of presumed damages may possibly be appropriate."); *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015) (surveying cases where compensatory damages were permitted for deprivation of constitutional rights and concluding that compensatory damages were appropriate "for specific, actual injuries [plaintiff] suffered that cannot be easily quantified"); *Celli v. City of St. Augustine*, 214 F. Supp. 2d 1255, 1262 (M.D. Fla. 2000) (allowing jury to place monetary value on intangible free speech rights to determine damages in § 1983 action).

Standing for injunctive relief is no longer at issue since, pursuant to the parties' stipulation, Plaintiff withdrew her motion for injunctive relief as resolved after Defendants agreed to provide her with the relief she sought. Thus, the County Defendants' standing argument misses the point. Standing for damages, however, is clear.

### B. *Plaintiff's Claims Are Ripe Because Her Injuries Already Occurred*

The County Defendants next argue that Plaintiff's claims are not ripe. This argument appears directed entirely at Plaintiff's claims for injunctive relief, which are not at issue due to the parties' stipulation.[7] Plaintiff's live claims are

---

[7] The County Defendants appear to only argue constitutional ripeness, not that there is any conceivable prudential reason for withholding adjudication.

16

for nominal and compensatory damages for chilled First Amendment conduct. The County Defendants do not appear to argue that these damages claims are not ripe. Indeed, these speech injuries have already occurred, and so are, by definition, ripe for adjudication.

The concept of ripeness is "designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003)). The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of merely potential or abstract disputes. *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).

When examining ripeness, the court considers "whether this is the correct *time* for the complainant to bring the action." *Wilderness Soc. v. Alcock*, 83 F.3d 386, 390 (11th Cir. 1996). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not

---

Defendants did not argue that Plaintiff's claims were moot. As to injunctive relief, it is not clear that any claims would be moot based on the voluntary cessation doctrine. *See, e.g., Shelly v. MRI Radiation Network, P.A.*, 505 F.3d 1173 (11th Cir. 2007) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). As to damages, the claims are not moot because the County Defendants have not provided Plaintiff with nominal or compensatory damages to redress her injuries.

16

occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

The only case Defendants cited in support of their ripeness argument, *Blankenship v. Buenger*, No. 6:14-CV-00474, 2015 WL 4459057 (W.D. Tex. July 16, 2015), offers no support at all. *Blankenship* was a magistrate judge's report and recommendation involving a pro se litigant's 42 U.S.C. § 1983 complaint against a private actor, not acting under color of state law. As an initial matter, the R&R based its standing holding on a case involving Eighth Amendment standing, not First Amendment standing, which is more capacious.[8] Most problematically, the block quote cited by County Defendants on page 13 of their brief omitted, by ellipsis, the most salient piece. In *Blankenship*, the Court found justiciability issues existed *precisely because* "Plaintiff has not been prosecuted, charged, or even arrested . . . ." *Blankenship*, 2015 WL 4459057, at *7. Here, on the other hand, Plaintiff has been prosecuted, charged, *and* arrested. Thus, there was nothing speculative about Plaintiff's fear of further prosecution prior to the entry of the parties' stipulation withdrawing the trespass ban.

Plaintiff's injuries are complete and concrete. The Constitution's guarantees of freedom of association and political expression allowed Plaintiff to bring voters to the polls, to help them vote, and to cast a vote herself. For a

---

[8] *See Reeves*, 631 F.2d at 381 n. 2 (5th Cir. 1980) (First Amendment standing "less demanding").

period of time, Defendants thwarted the exercise of these fundamental rights. That is a sufficient injury for Article III purposes. This Court has subject matter jurisdiction and can hear Plaintiff's claims. *Cf. New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 358–59 (1989) (noting "federal courts lack the authority to abstain from the exercise of jurisdiction that has been conferred"). The County Defendants' justiciability arguments should be rejected.

## CONCLUSION

Plaintiff's claims are justiciable, and the County Defendants' motion to be dismiss must be denied.

Respectfully submitted, this the 26th day of March, 2021.

*s/ Gerald Weber*
Gerald Weber
Georgia Bar No. 744878
LAW OFFICES OF GERRY WEBER, LLC
Post Office Box 5391
Atlanta, Georgia 31107
(404) 522-0507
wgerryweber@gmail.com

*s/ Mark Loudon Brown*
Mark Loudon Brown*
Georgia Bar No. 410986
*s/ Jeremy D. Cutting*
Jeremy D. Cutting*
Georgia Bar No. 947729
SOUTHERN CENTER FOR HUMAN RIGHTS
60 Walton Street, NW
Atlanta, GA 30303
(404) 688-1202

mloudonbrown@schr.org
ccutting@schr.org
*Admitted pro hac vice

*s/ Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002
MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, Georgia 30305
Phone: 404-812-4747
Fax: 404-812-4740
zack@mitchellshapiro.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Bradley J. Watkins
Richard K. Strickland
Amanda Szokoly
Jerome Adams
David Cole

This 26th day of March, 2021.

*s/Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002